[Cite as *State v. Ham*, 2017-Ohio-9189.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170043 |
| | | TRIAL NO. 16CRB-34134 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N.* |
| CLARENCE HAM, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed and Cause Remanded

Date of Judgment Entry on Appeal:  December 22, 2017

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Jennifer Bishop,* Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1} Clarence Ham appeals the judgment of the Hamilton County Municipal Court convicting him of telecommunications harassment. We affirm the judgment of the trial court, but remand the cause to the trial court for a nunc pro tunc entry to reflect that Ham was convicted of the amended telecommunications charge.

### Facts

{¶2} Clarence Ham was charged with one count of telecommunications harassment in violation of R.C. 2917.21(B), a misdemeanor of the first degree. The complaint alleged that Ham had made a telecommunication with the purpose to threaten Kiesha Rice. The complaint further alleged that Ham contacted Rice multiple times on her cell phone and made threats to cause her bodily harm.

{¶3} Ham pled not guilty and proceeded to a bench trial. Prior to trial, the state clarified that the harassment started on November 9, 2016 and continued until November 20, 2016. Ham acknowledged that he was on notice that the alleged harassment continued over that period of time, and that the state intended to prove that Ham continued to contact Rice after being asked to stop.

{¶4} Rice was the sole witness for the state. Rice testified that she had had a relationship with Clarence Ham, whom she initially knew as Mike Cottman. A week before the harassment started, Ham was driving her car and got into a car accident. Eventually, he was cited for the accident and for fleeing the scene of the accident. Rice learned his real name during the

investigation into the car accident. When Ham learned of the charges he was facing, he repeatedly contacted Rice.

{¶5} Rice testified that she told Ham to stop calling her after receiving multiple calls on November 9, 2016. Ham continued to contact her until November 19, 2016. She stated that he called her from numerous different numbers, texted her, and contacted her through Facebook messenger and her Facebook page. Rice testified that, during one call, Ham threatened to kill her and her family to avoid going to jail.

{¶6} Rice had documented the text messages, Facebook posts, and messages sent through Facebook messenger by taking screen shots with her cell phone. One of the messages, which Ham shared with her family members, claimed she had AIDS, and they would die together. The other message he shared included a photograph of his penis. In another message, he threatened to shoot up a child's birthday party.

{¶7} Ham repeatedly attempted to video call her through Facebook messenger. Rice testified that she blocked his telephone number and blocked him on Facebook, but he continued to contact her using call block and fake numbers. She knew Ham was contacting her through these numbers based on the content of the messages. When he continued to ignore her requests to stop contacting her, she called the police. The communications stopped when Ham was arrested and incarcerated.

{¶8} After Rice testified, the state rested, and Ham moved for an acquittal. The trial court denied the motion, and the defense rested and renewed its motion for an acquittal, which was denied.

{¶9}   The state moved to amend the complaint to conform to the evidence.   Specifically, the state requested that the telecommunications harassment charge be amended to reflect a violation of R.C. 2917.21(A)(5), which prohibits a person from continuing to make telecommunications after the recipient has told the caller to stop, instead of the (B) section, which prohibits a person from making a telecommunication with purpose to abuse, threaten, or harass another person.   Ham objected, arguing that the city should be required to proceed under the (B) section because all of the evidence had been submitted.   The court granted the motion.

{¶10}  The trial court found Ham guilty.   In reaching its decision, the court found that Ham had threatened to kill Rice and her family and harassed her by persistently contacting her.   The court further found that Ham continued to contact Rice after she told him to stop.   Finally the court found that Rice's testimony was "completely, totally believable."   The court sentenced Ham to 180 days in jail, gave him credit for the 58 days he had served, and remitted the costs.   Ham appealed raising two assignments of error.

### The Amendment of the Complaint

{¶11}   In his first assignment of error, Ham argues that the trial court abused its discretion in amending the complaint at the close of the evidence.  Specifically, Ham claims the amendment changed the substance of the offense, preventing him from realizing the importance of the evidence until the end of the trial.   Ham further argues that the state was aware of the additional claim before trial because the police report stated that Ham continued to call Rice from November 9-21 after being told to stop.

4

{¶12} As relevant here, Crim.R. 7(D) provides, "The court may at any time before, during, or after trial amend the * * * complaint * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." An amendment that changes the name or identity of the charged offense constitutes reversible error. *State v. Kates*, 169 Ohio App.3d 766, 2006-Ohio-6779, 865 N.E.2d 66, ¶ 13 (10th Dist.).

{¶13} If the amendment does not change the name or identity of the crime charged, then we apply an abuse-of-discretion standard to review the trial court's decision to allow a Crim.R. 7(D) amendment. *State v. Beach,* 148 Ohio App.3d 181, 2002-Ohio-2759, 772 N.E.2d 677, ¶ 23 (1st Dist.). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶14} In order to constitute reversible error, the defendant must show not only that the trial court abused its discretion, but also that the amendment hampered or otherwise prejudiced the defense. *Beach* at ¶ 23. If an amendment changes the substance of the complaint and the proof, the defendant is entitled to a reasonable continuance if he was misled or prejudiced by the variance. Crim.R. 7(D).

### *Legal Analysis*

{¶15} Ham concedes that the amendment did not change the name or identity of the charged offense. The name of the offense,

telecommunications harassment, remained the same after the amendment, and both offenses were first-degree misdemeanors.

{¶16} Instead, Ham argues that the trial court abused its discretion because the amended charge relied on different facts, and Ham was prejudiced because he did not realize the importance of those facts during the trial. We first note that Ham admitted that he was notified of all the allegations against him prior to the start of trial, and that the state intended to prove that Ham continued to contact her after being asked to stop. Additionally, Ham did not seek a continuance, request an opportunity to present additional evidence, or inform the trial court that he was misled or prejudiced by the amendment. Based upon this record, we cannot conclude that the trial court abused its discretion in amending the charge.

{¶17} Furthermore, the trial court specifically found that the state proved that Ham had committed telecommunications harassment as initially charged because he threatened and harassed Rice, and as amended, because he continued to contact Rice after she asked him to stop. Therefore, we find that Ham was not prejudiced by the amendment. The first assignment of error is overruled.

### Sufficiency and Manifest Weight

{¶18} In his second assignment of error, Ham argues that the guilty finding was not supported by sufficient evidence and was contrary to the manifest weight of the evidence.

{¶19} In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found all the essential elements

of the crime proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When considering a challenge to the weight of the evidence, the court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶20} Ham contends that the evidence was insufficient and the conviction was against the manifest weight of the evidence because the state failed to present credible evidence that Ham contacted Rice after being told to stop. Ham primarily argues that Rice's testimony was not credible.

{¶21} However, it is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve. *See State v. Railey*, 2012-Ohio-4233, 977 N.E.2d 703, ¶ 14 (1st Dist.). Here, the trial court specifically found that Rice's testimony was "completely, totally believable," and her testimony was sufficient evidence to support his telecommunications-harassment conviction. Based upon our review of the record, we cannot say that the court clearly lost its way and created such a manifest miscarriage of justice that we must reverse Ham's conviction and order a new trial. Therefore, we overrule Ham's second assignment of error.

### Conclusion

{¶22} We note that the judgment entry of conviction does not reflect that the charge was amended from a telecommunications-harassment

violation under R.C. 2917.21(B) to a violation under R.C. 2917.21(A)(5). Accordingly, we affirm the judgment of the trial court. However, we remand the cause to the trial court to issue a nunc pro tunc entry so that the judgment entry of conviction reflects that Ham was convicted of the amended charge of telecommunications harassment in violation of R.C. 2917.21(A)(5).

Judgment affirmed and cause remanded.

**MOCK, P.J.**, concurs.
**MYERS, J.,** concurs in judgment only.

Please note:

The court has recorded its own entry this date.