[Cite as *State v. Burns*, 2012-Ohio-2698.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 09-MA-193 |
| | ) | |
| DAJUAN BURNS, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:       Criminal Appeal from Court of Common
                                Pleas of Mahoning County, Ohio
                                Case No. 09CR527

JUDGMENT:                       Affirmed in part
                                Reversed and remanded in part

APPEARANCES:
For Plaintiff-Appellee           Paul Gains
                                 Prosecutor
                                 Ralph M. Rivera
                                 Assistant Prosecutor
                                 21 W. Boardman St., 6th Floor
                                 Youngstown, Ohio 44503-1426

For Defendant-Appellant          Attorney J. Dean Carro
                                 University of Akron
                                 School of Law
                                 Akron, Ohio 44325

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: June 12, 2012

DONOFRIO, J.

{¶1} Defendant-appellant, DaJuan Burns, appeals from a Mahoning County Common Pleas Court judgment convicting him of possession of a deadly weapon while under detention and felonious assault, following a jury trial, and the resulting sentence.

{¶2} During 2008, appellant was housed at the Ohio State Penitentiary (OSP). Corrections Officers there alleged that he was involved in five different incidents spanning an eight-month period. The allegations were that appellant assaulted and/or harassed numerous officers with a bodily substance.

{¶3} Of importance to this appeal is the incident that occurred on October 31, 2008, involving Officer Jeremy Ifft. Officer Ifft was passing out cleaning supplies to the inmates in C-block where appellant was housed. Officer Ifft offered appellant a broom and dust pan to clean his cell. Appellant accepted. Officer Ifft passed the supplies to appellant through the "cuff port." The cuff port is a metal flap on the front of the cell door opened by a key through which the corrections officers pass food and other necessary items to the inmate in the cell.

{¶4} Appellant passed the broom and dustpan back through the cuff port to Officer Ifft and Officer Ifft gave appellant some paper towels. Officer Ifft then asked appellant if he wanted a mop. Appellant said that he did. As Officer Ifft handed appellant the mop through the cuff port, appellant grabbed Officer Ifft's wrist and stabbed and cut him in the forearm. Officer Ifft described the item that appellant used to cut him as a shiny piece of metal. It required nine stitches to close the wound on Officer Ifft's arm.

{¶5} A Mahoning County Grand Jury indicted appellant on one count of possession of a deadly weapon while under detention, a third-degree felony in violation of R.C. 2923.131(A)(B)(C)(2)(c); one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2)(D); six counts of harassment with a bodily substance, fifth-degree felonies in violation of R.C. 2921.38(A)(D); and one count of assault, a fifth-degree felony in violation of R.C. 2903.13(A)(C)(2)(a).

**{¶6}** Appellant filed a motion for relief from improper joinder requesting that the court grant him five separate trials for each of the five incidents. The trial court overruled this motion.

**{¶7}** On the day of trial and over appellant's objection, the court granted plaintiff-appellee's, the State of Ohio's, motion to amend count one of the indictment to include language that appellant was under detention at a detention facility serving a sentence for a second-degree felony and to include the mens rea of "knowingly."

**{¶8}** The matter proceeded to a jury trial. The jury found appellant guilty of possession of a deadly weapon while under detention at a detention facility and guilty of felonious assault. On the remaining seven counts, the jury found appellant not guilty.

**{¶9}** The trial court subsequently sentenced appellant to eight years for felonious assault and five years for possession of a deadly weapon while under detention. The court ordered appellant to serve these sentences consecutive to one another and consecutive to the sentence he was already serving.

**{¶10}** Appellant filed a timely notice of appeal on November 20, 2009.

**{¶11}** Appellant raises seven assignments of error, the first of which states:

> APPELLANT BURNS' SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED WHEN THE TRIAL COURT HELD HIS TRIAL COUNSEL IN CONTEMPT, TRIGGERING AN ACTUAL CONFLICT OF INTEREST THAT DENIED APPELLANT BURNS THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT.

**{¶12}** Two incidents occurred during the course of trial concerning this assignment of error.

**{¶13}** The first incident occurred at the close of the state's examination of Michael Wylie, the OSP institutional investigator. Appellant's counsel asked the court for permission to call Wylie in her case in chief in defense of appellant. (Tr. 343).

The court stated that she should complete any questioning of Wylie at the present time and it would not permit her to recall him later. (Tr. 343). Counsel tried to make her point to the court that the state had told her that it would have video equipment available to use during questioning. (Tr. 344). The court interrupted her and called counsel out of the jury's presence. (Tr. 344). The court stated that it had already advised both counsel that they were not to argue in front of the jury and were not to contest the court's rulings in front of the jury. (Tr. 344). It informed counsel that if she failed to follow this rule again, it would hold her in contempt. (Tr. 344-45).

{¶14} The second incident occurred during counsel's cross examination of Ohio State Trooper Vicki Casey. (Tr. 551, 564, 571). Later, in chambers, the court and counsel put the incident on the record. (Tr. 601-605). The court stated that it called its own side bar during defense counsel's cross examination because it was "bewildered at the presentation" and asked her to explain it. (Tr. 601). The court stated that it was satisfied with counsel's explanation at the time and she continued her questioning until the court interrupted again. (Tr. 601-602). The court felt it was under an obligation to stop the irrelevant or improper evidence from being offered. (Tr. 602). The court then instructed counsel to cease what she was doing or to summarize it. (Tr. 602). The court stated that counsel continued to do exactly what it had instructed her to stop doing. (Tr. 603). Because it found that counsel acted in deliberate disregard of its directive, the court held her in contempt. (Tr. 604). Finally, the court informed counsel that it would conclude the contempt hearing at the conclusion of the trial and "a lot of what I do will probably depend upon your conduct in this trial in the future." (Tr. 605).

{¶15} At the close of evidence, counsel moved for a mistrial. (Tr. 700). As a basis, she stated:

> I do believe that what has transpired over the past two days has interfered with my preparation and presentation of the case ineffectively representing Mr. Burns. I do think there were things subtle and otherwise in front of the jury that would have impacted

- - or I should say potentially impacted what they were perceiving and seeing and how they would view the case[.] (Tr. 701).

The court overruled her motion. (Tr. 702).

{¶16} Appellant asserts that once the trial court held his counsel in contempt, she could not effectively represent him due to a conflict of interest between protecting herself and defending him. He argues that even the most competent attorney cannot effectively represent her client when faced with contempt sanctions from the trial court. Appellant contends that the conditions created by the trial court made it impossible for counsel to render effective assistance of counsel.

{¶17} In order to establish a violation of the Sixth Amendment's right to effective assistance of counsel, "'a defendant * * * must demonstrate that an *actual conflict* of interest *adversely affected* his lawyer's performance.' (Emphasis added.) *Cuyler v. Sullivan* (1980), 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346–347. A possible conflict is insufficient. Id. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 347." *State v. Getsy*, 84 Ohio St.3d 180, 187, 702 N.E.2d 866 (1998). A conflict of interest occurs when counsel's regard for one duty tends to lead to the disregard of another duty. *Id.*, citing *State v. Manross*, 40 Ohio St.3d 180, 18, 532 N.E.2d 735 (1988).

{¶18} In this case, the court did not hold appellant's counsel in contempt until after the state rested its case. Appellant's counsel did not move for a mistrial or assert a conflict of interest until both sides had rested and the court was going through the jury instructions and wrapping things up with counsel. Thus, appellant's counsel proceeded through most of the trial without the contempt finding or the "stress" of a possible conflict of interest. Counsel apparently believed that she could effectively represent appellant when the court held her in contempt or she would have moved for a mistrial at that point.

{¶19} Furthermore, an examination of counsel's representation of appellant after the court held her in contempt reveals that she zealously presented a defense

that likely resulted in appellant's acquittal on seven of the nine charges he faced. Counsel presented three witnesses. The first witness was a forensic biologist who tested certain garments for bodily substances. The witness testified that no bodily substances were found on two garments that were submitted for testing. (Tr. 623). This testimony effectively defeated two of the harassment with a bodily substance charges against appellant. The next witness was an OSP nurse who examined two corrections officers who claimed appellant had thrown a hot substance at them and burned them. He testified that no burns were noted on either officer. (Tr. 635-37). This testimony could have likely resulted in the acquittal of the assault charge. The third witness was an OSP lieutenant who testified that a search of appellant's cell did not turn up the weapon used to assault Officer Ifft. (Tr. 649). Thus, although the jury ultimately convicted appellant of this charge, it was not because his counsel failed to zealously present a defense to it.

{¶20} In sum, counsel's performance did not adversely affect appellant's defense. Counsel's representation cannot be viewed as ineffective. In fact, the jury acquitted appellant of seven of the nine felony charges he faced.

{¶21} Accordingly, appellant's first assignment of error is without merit.

{¶22} Appellant's second assignment of error states:

THE STATE FAILED TO PRESENT EVIDENCE SUFFICIENT TO PROVE THE DEADLY-WEAPON ELEMENT BEYOND A REASONABLE DOUBT FOR FELONIOUS ASSAULT WITH A DEADLY WEAPON, R.C. 2903.11(A)(2), AND POSSESSION OF A DEADLY WEAPON WHILE UNDER DETENTION, R.C. 2923.131(B), AND AS A RESULT, APPELLANT BURNS' FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED.

{¶23} Appellant argues that the state failed to produce sufficient evidence that he possessed a "deadly weapon." For support, he points out that Officer Ifft's wound

was only 1.5 inches long and .74 inches deep. He further notes that the "weapon" was never recovered.

**{¶24}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

**{¶25}** Appellant only takes issue with the "deadly weapon" element of both felonious assault and possession of a deadly weapon while under detention. R.C. 2923.11(A) defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

**{¶26}** Officer Ifft testified that he was passing out cleaning supplies to the inmates on the day in question. (Tr. 581). He gave appellant a broom and dustpan through the cuff port and when appellant was done, he passed those items back to Officer Ifft. (Tr. 581). Next, Officer Ifft gave appellant some paper towels. (Tr. 581). Officer Ifft then asked appellant if he wanted a mop. (Tr. 582). Appellant stated that he did. (Tr. 582). Officer Ifft handed appellant a mop through the cuff port. (Tr. 582). As he did so, appellant grabbed the officer's right wrist, stabbed him in the forearm, and cut him. (Tr. 582). Officer Ifft was able to then pull his hand out. (Tr. 582). Officer Ifft described the item appellant stabbed him with as "a shiny piece of metal." (Tr. 583).

**{¶27}** The cut to Officer Ifft's arm required nine stitches to close. (Tr. 585). The stiches were not just surface stiches. (Tr. 586). Some stiches were deep

underneath. (Tr. 586). The wound was approximately one and a half inches long and three-quarters of an inch deep. (Tr. 585). It left a scar. (Tr. 583).

**{¶28}** Trooper Vicki Casey, who investigated the stabbing, reported that no weapon was found in appellant's cell. (Tr. 559).

**{¶29}** To prove the shiny piece of metal was a "deadly weapon," the state had to prove: "1) it was capable of inflicting death, and 2) it was designed or specially adapted for use as a weapon or, was used as a weapon." *State v. Miller*, 7th Dist. No. 10-MA-14, 2010-Ohio-6390, ¶19. Clearly, the shiny piece of metal was used as a weapon. Officer Ifft testified that appellant used it to stab and cut him. Thus, the only question is whether the shiny piece of metal was capable of inflicting death.

**{¶30}** A jury could likely view a shiny piece of metal that was used to cut and stab someone as being very similar to a knife. A knife is not presumed to be a deadly weapon. *Id*. But Officer Ifft's testimony and resulting wound, especially when viewed in a light most favorable to the state, could lead a reasonable jury to conclude that the shiny piece of metal was a deadly weapon. Officer Ifft's wound required nine stiches to close, some of which were deep in his arm. This demonstrated that the shiny piece of metal penetrated deep into his arm and was capable of causing a serious physical injury. Had appellant stabbed Officer Ifft in the neck or chest, his injury could have been deadly.

**{¶31}** Courts have held that objects similar to a shiny piece of metal may be considered "deadly weapons." In fact, one court commented: "'It almost follows without the need to cite legal authority that either a knife or a screwdriver is capable of inflicting a deadly wound. This is especially so if either one were plunged into the victim's neck.'" *State v. Brown*, 6th Dist. No. WD-09-058, 2010-Ohio-1698, ¶14, quoting *State v. Umphries*, 4th Dist. No. 02CA2662, 2003-Ohio-599. A box cutter has likewise been found to be a deadly weapon. See *State v. Hill*, 10th Dist. No. 09AP-398, 2010-Ohio-1687.

**{¶32}** As such, the state presented sufficient evidence to prove the "deadly weapon" element of both felonious assault and possession of a deadly weapon while

under detention. Accordingly, appellant's second assignment of error is without merit.

{¶33} Appellant's third assignment of error states:

> APPELLANT BURNS WAS PREJUDICED BY A DEFECTIVE INDICTMENT IN VIOLATION OF SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION WHEN THE STATE AMENDED THE INDICTMENT TO INCLUDE AN ELEMENT WHICH INCREASED THE LEVEL OF THE CRIME AND THEREFORE CHANGING ITS IDENTITY EVEN THOUGH THAT ELEMENT WAS NOT FOUND BY THE GRAND JURY.

{¶34} Appellant's original indictment on the possession of a deadly weapon while under detention stated that appellant "did possess a deadly weapon, to wit: a sharp, metal object, while under detention at a detention facility, in violation of Section 2923.131(A)(B)(c) [sic.] of the Revised Code, a Felony of the Third Degree." The caption of the indictment, however, read "POSSESSION OF A DEADLY WEAPON WHILE UNDER DETENTION R.C. 2923.131(A)(B)(c)(2)(c) [sic.] F-3."

{¶35} Just prior to trial, the state moved to amend the indictment to add the additional statement that while committing the crime, appellant was serving a sentence having been convicted of a second-degree felony after 1996. (Tr. 2, 6-7). The court allowed this amendment. (Tr. 9-10).

{¶36} Appellant contends that his indictment was faulty because it did not include either of the necessary elements required to elevate the crime of possession of a weapon under detention to a third-degree felony. He argues that when the court allowed the state to amend the indictment to add the missing element, it allowed the state to change the level of the offense and, therefore, the identity of the crime charged. Appellant goes on to argue that the grand jury transcripts do not mention that appellant was under detention for a second-degree felony committed after July

1, 1996. Thus, he asserts this was not just a clerical error. Instead, he contends this element was never presented to the grand jury.

**{¶37}** Possession of a deadly weapon while under detention can range from a fifth-degree felony to a first-degree felony depending on the circumstances. R.C. 2923.131. Appellant was charged with a third-degree felony.

**{¶38}** There are two statutory provisions that can qualify the charge as a third-degree felony: (1) the most serious offense for which the person was under detention is a second-degree felony committed on or after July 1, 1996, or is a second-degree aggravated felony or a first-degree felony committed prior to July 1, 1996 (R.C. 2923.131(C)(2)(c)(i)); or (2) If the person was under detention as an alleged or adjudicated delinquent child, the most serious act for which the person was under detention was committed on or after July 1, 1996, and would be a second-degree felony if committed by an adult, or was committed prior to July 1, 1996, and would have been a second-degree aggravated felony or a first-degree felony if committed by an adult (R.C. 2923.131(C)(2)(c)(ii)).

**{¶39}** Because the indictment did not specify which provision appellant was charged with violating, appellant argues we cannot be sure that the charge on which he was tried was the same charge found by the grand jury.

**{¶40}** Appellate courts review a trial court's decision to permit the amendment of an indictment for an abuse of discretion. *State v. Beach*, 148 Ohio App.3d 181, 2002-Ohio-2759, 772 N.E.2d 677, ¶23. Abuse of discretion connotes more than an error of law; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶41}** Article I, Section 10 of the Ohio Constitution provides that "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." Accordingly, the Ohio Constitution guarantees an accused that the essential facts constituting the offense will be found in the indictment. *State v. Pepka*, 125 Ohio St.3d 124, 2010-Ohio-1045, 772 N.E.2d 677, ¶14.

**{¶42}** Crim.R. 7(D) allows the amendment of the indictment as follows:

> The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.

**{¶43}** If an amendment changes the penalty or degree of the charged offense, it changes the identity of the offense and is not permitted by Crim.R. 7(D). *Pepka*, at ¶15, citing *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4527, ¶1. So long as the state complies with Crim.R. 7(D), it may amend a defective indictment, even if the original indictment omits an essential element of the offense with which the defendant is charged. *Id.*, citing *State v. O'Brien*, 30 Ohio St.3d 122, 127-128, 508 N.E.2d 144 (1987).

**{¶44}** In this case, appellant was not misled or prejudiced by the omission of the element from the indictment.

> "An indictment, which does not contain all the essential elements of an offense, may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment." *O'Brien*, 30 Ohio St.3d at paragraph two of the syllabus.

**{¶45}** First, although the body of the indictment did not contain the additional element that appellant was under detention for a second-degree felony, the indictment's caption set out this statutory subsection. Thus, if appellant referred to the statute as stated in the indictment's caption, he would be informed of the specific subsection the state was alleging that he violated.

{¶46} Second, the body of the indictment did state that appellant was being charged with a third-degree felony. Thus, by amending the indictment the state did not change the penalty or degree of the offense.

{¶47} And third, the bill of particulars put appellant on notice, if he was not already on notice, of the specifics of the charge. The bill of particulars alleged that appellant

> did knowingly possess a deadly weapon, specifically a sharp metal object, while under detention at said penitentiary; and the most serious offense for which he was incarcerated is a felony of second degree committed after July 1, 1996, rendering said possess a felony of the third degree in violation of Ohio Revised Code Section 2923.131(B)(C)(2)(c).

{¶48} Given these considerations, the trial court did not abuse its discretion in allowing the state to amend the indictment. Accordingly, appellant's third assignment of error is without merit.

{¶49} Appellant's fourth assignment of error states:

> THE TRIAL COURT MADE FINDINGS OF FACT AT SENTENCING THAT WERE NOT IMPLICIT IN THE JURY'S VERDICT AND THEREBY VIOLATED APPELLANT BURNS' SIXTH AND FOURTEENTH AMENDMENT RIGHTS.

{¶50} Appellant contends here that the trial court engaged in unconstitutional judicial fact-finding in sentencing him, which is prohibited by *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005). Specifically, he argues that the jury found that Officer Ifft suffered "physical harm" but the court found that he suffered "serious physical harm."

{¶51} The Ohio Supreme Court has held that in reviewing felony sentences, the appellate courts must use a two-prong approach.

First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment shall be reviewed under an abuse of discretion standard. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶4, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.

**{¶52}** Appellant does not contend that the trial court abused its discretion, only that his sentence is contrary to law.

**{¶53}** For felonious assault, a second-degree felony, the trial court sentenced appellant to eight years in prison. The possible sentences for a second-degree felony are two, three, four, five, six, seven, or eight years. R.C. 2929.14(A)(2). For possession of a deadly weapon while under detention at a detention facility, a third-degree felony, the court sentenced appellant to five years in prison. The possible prison sentences for a third-degree felony at the time appellant was sentenced were one, two, three, four, or five years. Former R.C. 2929.14(A)(3).[1] Thus, appellant's sentences are within the applicable statutory ranges.

**{¶54}** Appellant's argument under this assignment of error must fail. Appellant contends that the trial court engaged in unconstitutional fact-finding when, in considering the seriousness factors under R.C. 2929.12(B)(C), the court found that the "victim suffered serious physical harm." (Tr. 831). The court considered this factor in sentencing appellant to maximum, consecutive sentences.

---

1. **{¶a}** R.C. 2929.14(A)(3) was amended in 2011 and now reads:
**{¶b}** (3)(a) For a felony of the third degree that is a violation of section 2903.06, 2903.08, 2907.03, 2907.04, or 2907.05 of the Revised Code or that is a violation of section 2911.02 or 2911.12 of the Revised Code if the offender previously has been convicted of or pleaded guilty in two or more separate proceedings to two or more violations of section 2911.01, 2911. 02, 2911.11, or 2911.12 of the Revised Code, the prison term shall be twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four, or sixty months.
**{¶c}** (b) For a felony of the third degree that is not an offense for which division (A)(3)(a) of this section applies, the prison term shall be nine, twelve, eighteen, twenty-four, thirty, or thirty-six months.

{¶55} Pursuant to *Foster*, at paragraphs one and three of the syllabus, R.C. 2929.14(B)(C) and (E) are unconstitutional because they require trial courts to engage in fact-finding. These unconstitutional statutes required trial courts to make specific findings, not proven to the jury, before sentencing an offender to maximum and/or concurrent sentences. *Id.* at ¶83. But as to R.C. 2929.12, at issue in this case, *Foster* stated that it only requires trial courts to "consider" the factors listed. *Id.* at ¶42. One of the factors listed is that the victim suffered serious physical harm. R.C. 2929.12(B)(2).

{¶56} This court has rejected appellant's argument here.

> "Simply put, *Foster* held that it was unconstitutional for the Ohio General Assembly to mandate that a trial court find a particular fact before imposing a particular sentence. Furthermore, the decision explicitly stated that trial courts would have to engage in fact-finding when sentencing felony offenders in the future." *State v. Stroud*, 7th Dist. No. 07MA91, 2008-Ohio-3187, ¶ 8. See, also, *Simmons*, 7th Dist. No. 07JE22, 2008-Ohio-3337, ¶ 11-14 (it is statutorily-required specific judicial fact-finding that is prohibited, not the discretionary expression of the existence of various sentencing considerations).
>
> In reaching our holding, we noted "that the United States Supreme Court [in *Blakey* ] was careful to clarify that a defendant's right to a jury trial is not violated when a judge finds facts when determining an appropriate sentence." *Stroud*, supra, at ¶ 11, citing *Blakely*, supra, at 308-309. Rather, the right to a jury trial was violated when a trial court finds "facts mandated by statute when determining an appropriate sentence ." *Id.*, citing *Blakely*, supra, at 308-309.
>
> * * *

Reviewing our decision in *Stroud*, we find that it does not violate *Foster*, *Blakely*, or the spirit of those decisions. Furthermore, we find that the Ohio Supreme Court's indication that courts shall "consider" the factors in R.C. 2929.12, does not mean that courts are only permitted to "consider" those factors if they are an element of the convicted offense. To find otherwise is illogical. To consider something is to take it into account. www.merriam-webster.com/dictionary/consider. Thus, by definition, the trial court was permitted to take any factor that could be derived from the facts presented at trial into account when determining the appropriate sentence. As we have recently stated, "A sentencing court is permitted to express its impressions derived from trial." *Jones*, supra, at ¶ 20.

To hold otherwise would raise questions about the applicability and purpose of R.C. 2929.12. If a factor can be considered by the trial court, but cannot be used in determining the appropriate sentencing unless that factor is an element of the offense, what is the use of R.C. 2929.12 in setting forth factors for the court to consider? Likewise, logically how does a trial court exercise its discretion in that instance? While the jury's function in a criminal trial is immensely important, it is not the jury's function to sentence the offender. Rather, that duty is the sole responsibility of the sentencing judge. The Ohio Supreme Court has clearly indicated that trial judges have discretion in sentencing. The judges have this discretion because they are in the best position to give a sentence that is commensurate with the offense committed. Sentencing courts see a vast array of offenses, criminals and factual scenarios involving the crimes committed. This knowledge should be used in determining the

appropriate sentence to impose on an offender given all the facts presented. *State v. Austin*, 7th Dist. No. 09-MA-167, 2010-Ohio-6583, ¶15-19.

**{¶57}** Thus, the trial court here was permitted to consider whether the victim suffered serious physical harm. Accordingly, appellant's fourth assignment of error is without merit.

**{¶58}** Appellant's fifth assignment of error states:

> THE TRIAL COURT ERRED IN SENTENCING APPELLANT BURNS TO MULTIPLE PUNISHMENTS, IN VIOLATION OF R.C. 2941.25 AND THE DOUBLE JEOPARDY CLAUSES OF THE UNITED STATES AND THE OHIO CONSTITUTIONS, FOR FELONIOUS ASSAULT WITH A DEADLY WEAPON AND POSSESSION OF A DEADLY WEAPON WHILE UNDER DETENTION, WHICH ARE ALLIED OFFENSES FROM A SINGLE ACT WITH A SINGLE VICTIM WITH A SINGLE ANIMUS.

**{¶59}** Appellant argues that his two offenses are allied offenses of similar import that should have been merged at sentencing. He relies on *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, syllabus, where the Ohio Supreme Court held: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. (*State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)" Appellant asserts that it is possible to commit felonious assault while possessing a deadly weapon under detention and the offenses were committed at the same time and for the same purpose. He contends that while the guilty verdicts should remain intact, we must remand this matter for resentencing.

{¶60} Merger of allied offenses is a question of law. *State v. Taylor*, 7th Dist. No. 07-MA-115, 2009-Ohio-3334, ¶19. Therefore, we must use a de novo standard of review.

{¶61} Pursuant to R.C. 2941.25, the merger statute:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶62} *Johnson* changed the way courts are to analyze the issue of allied offenses of similar import. Under the old analysis, courts were to compare the elements of the offenses in the abstract in order to determine whether the elements corresponded to such a degree that the commission of one offense would result in the commission of the other offense. *Rance*, 85 Ohio St.3d at the syllabus. But now, under *Johnson*, 128 Ohio St.3d at the syllabus, courts are to consider the defendant's conduct in determining whether the offenses are of similar import.

{¶63} Even though *Johnson* changed the way we are to consider whether offenses are allied offenses of similar import, it did not provide us with a controlling test to use. This is because *Johnson* does not contain a majority opinion. Instead, it contains two plurality opinions and one minority opinion. "Our only new guidance is to consider the defendant's conduct and thus the particular facts of each case to determine whether the offenses are of similar import." *State v. Gardner*, 7th Dist. No. 10-MA-52, 2011-Ohio-2644, ¶23.

**{¶64}** Appellant was sentenced in 2009, before *Johnson* was decided in 2010. So he could not have specifically raised an argument under *Johnson*. Appellant's counsel did raise an argument at sentencing that appellant's sentences should be concurrent because the jury could not have found felonious assault without finding that appellant possessed a deadly weapon. (Tr. 822). Thus, while counsel did not argue merger per se, counsel's argument was sufficient to preserve this issue for appeal. Furthermore, even if counsel did not specifically preserve this issue, the Ohio Supreme Court has held that the imposition of multiple sentences for allied offenses of similar import is plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶31.

**{¶65}** First, we must examine the elements of both offenses at issue here.

**{¶66}** Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides that no person shall knowingly "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *."

**{¶67}** Appellant was additionally convicted of possession of a deadly weapon while under detention at a detention facility in violation of R.C. 2923.131(B), which states: "No person under detention at a detention facility shall possess a deadly weapon."

**{¶68}** Under the felonious assault statute, appellant was convicted of causing physical harm to Officer Ifft by means of a deadly weapon. In order to do so, he necessarily had to possess a deadly weapon. Appellant possessed a shiny piece of metal. This shiny piece of metal, standing alone, was not a deadly weapon. It was not until appellant used it in a manner so as to stab and seriously injure Officer Ifft that it became a deadly weapon. And because appellant was under detention when he committed felonious assault with a deadly weapon, he also necessarily committed possession of a deadly weapon while under detention. Additionally, the state presented no evidence that appellant possessed this shiny piece of metal prior to or after stabbing Officer Ifft. Thus, when considering appellant's specific conduct, and not just the elements of the offenses in the abstract, felonious assault with a deadly

weapon and possession of a deadly weapon while under detention are allied offenses of similar import in this case. As such, the trial court should have merged them at sentencing.

{¶69} Accordingly, appellant's fifth assignment of error has merit.

{¶70} Appellant's appointed counsel states that appellant's sixth and seventh assignments of error are presented solely at appellant's request.

{¶71} Appellant's sixth assignment of error states:

> APPELLANT BURNS WAS DENIED DUE PROCESS OF LAW UNDER ARTICLES 1 & 16 OF THE OHIO CONSTITUTION AND THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION BECAUSE THE INSTANT PROSECUTION WAS NOT BEGUN BY A COMPLAINT AS REQUIRED BY CRIM.R. 3 AND R.C. 2935.09.

{¶72} Appellant argues that the investigating officer failed to file a complaint in this case and instead merely requested that he be charged. He contends that the officer's failure to file a complaint violated Crim.R. 3 and R.C. 2935.09, which prohibit a case from being directly presented to a grand jury.

{¶73} In a Fourth District case, the appellant raised a similar argument as appellant does here. In overruling the appellant's argument, the court reasoned:

> [A]s the Ohio Supreme Court has previously noted, "[a]n accused in a felony case is not tried upon the affidavit filed against him but on the indictment by the grand jury." *Foston v. Maxwell* (1964), 177 Ohio St. 74, 76, 202 N.E.2d 425. The grand jury has the discretion to review the evidence presented to it and determine which offenses to charge. "The fact that the grand jury determines that an accused shall be charged with a felony other than that made against him in the affidavit [or complaint]

originally filed and upon which he is bound over to the grand jury has no effect on the validity of the indictment returned by the grand jury." *Id*., citing *Clinger v. Maxwell* (1964), 175 Ohio St. 540, 196 N.E.2d 771. See, also, *State v. Klingenberger* (1925), 113 Ohio St. 418, 426, 149 N.E. 395 (Noting that grand juries have plenary and inquisitorial powers and may lawfully, upon their own motion, originate charges against offenders.). Furthermore, even if Thacker alleged that the original complaints contained defects, such defects would be irrelevant and harmless to Thacker's convictions based upon the grand jury indictment. See *State v. Martin*, Lawrence App. No. 01CA24, 2002-Ohio-6140, at ¶ 24. *State v. Thacker*, 4th Dist. No. 04-CA-5, 2004-Ohio-3978, ¶12.

**{¶74}** Based on the reasons set out in *Thacker*, any error that occurred by failing to file a complaint in this case was rendered harmless once the grand jury charged appellant. Accordingly, appellant's sixth assignment of error is without merit.

**{¶75}** Appellant's seventh assignment of error states:

> THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO SEVER THE CHARGES AGAINST APPELLANT BURNS, DENYING APPELLANT BURNS A FAIR TRIAL.

**{¶76}** Appellant argues that the trial court abused its discretion in denying his request for separate trials. He points out that the indictment charged him with nine offenses arising from five separate incidents and spanning over eight months that did not include common evidence or witnesses.

{¶77} An appellate court will only reverse a trial court's denial of severance if the trial court abused its discretion. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶33.

{¶78} Crim.R. 8(A) provides that two or more offenses may be charged in the same indictment if the offenses are (1) of the same or similar character, or (2) are based on the same act or transaction, or (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or (4) are part of a course of criminal conduct. "The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.'" *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990), quoting *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981).

{¶79} If it appears that a defendant is prejudiced by the joinder of offenses, the trial court may grant a severance. Crim.R. 14. But the burden is on the defendant to prove prejudice and to prove that the trial court abused its discretion in denying severance. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E2d 959, ¶29.

{¶80} In this case, the nine offenses appellant was charged with were of similar character. All of the alleged offenses occurred while appellant was under detention at the OSP. And all of the alleged offense consisted of some sort of assault on a corrections officer or harassment of a corrections officer with a bodily substance. Thus, the offenses were properly joined in the indictment.

> When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992).

**{¶81}** When simple and distinct evidence exists, an accused is not prejudiced by the joinder of multiple offenses in a single trial, regardless of whether the evidence is admissible as other-acts evidence. *State v. Coley*, 93 Ohio St.3d 253, 260, 754 N.E.2d 1129 (2001).

**{¶82}** Here, the evidence of the other crimes would likely not have been admissible if the counts were severed. The crimes each had their own distinct victim-witnesses and it seems unlikely that the victim-witnesses would testify in a case that did not have to do with the offense against them.

**{¶83}** Nonetheless, the evidence of each crime was simple and distinct. Each of the officers who had been a victim of one of the alleged offenses simply testified regarding that particular offense. None of their testimonies were very long or involved. And the jury must have been able to keep the evidence as to each offense separate in their minds. They acquitted appellant on seven offenses, which made up four of the incidents, and convicted appellant of two offenses, which made up the fifth incident. Thus, appellant cannot demonstrate that he was prejudiced by the court's decision denying severance.

**{¶84}** Accordingly, appellant's seventh assignment of error is without merit.

**{¶85}** For the reasons stated above, appellant's convictions are hereby affirmed. His sentence is reversed and the matter is remanded for merger of his convictions and resentencing at which time the state shall elect which allied offense it will pursue.

Waite, P.J., concurs.

DeGenaro, J. concurs.